UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NAHUM BERNARDEZ and
DEREK MELVIN,
 Plaintiffs,

v.

WATERMAN STEAMSHIP
CORPORATION, and OCEAN GIANT II
SHIPPING TRUST,
 Defendants,

Civil Action No. 21-11355-MLW

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS FIVE AND THIRTEEN OF THEIR COMPLAINT**

 Now come the Plaintiffs, Nahum Bernardez and Derek Melvin, by and through their undersigned counsel and submit their Memorandum of Law in Support of their Motion for Partial Summary Judgment on Counts V and XIII of their Complaint. As more fully articulated below, the Court must enter judgment in favor of the Plaintiff because the undisputed material facts show that the container of Spectrus NX1100 loaded onto the M/V OCEAN GIANT on August 20, 2019, was split and leaking and thus, as a matter of law, an unseaworthy condition, which was the proximate cause of the chemical burns and permanent discoloration to the Plaintiffs skin. Conseuently, the Court must enter Partial Summary Judgment in favor of the Plaintiffs as to Counts Five and Thirteen of their Complaint.

**I. FACTS**

 During the morning hours of August 20, 2019, the M/V OCEAN GIANT was in Norfolk Virginia, taking on stores and consumables to be used onboard. *Pls.'s Stmnt of Mat Facts, ¶ 4, 5*. At that time the Defendant, Waterman Steamship Corporation, was the owner *pro hac vice* of the M/V OCEAN GIANT and also controlled and operated the vessel. *Id., at ¶ 2*. One item of

stores loaded onto the vessel that morning was a container of a chemical called Spectrus NX1100, which is a biocide used to kill algae in the vessel's fuel system. *Id., ¶ 6, 7*. This chemical is a corrosive acid and skin desensitizer that can cause skin burns. *Id., at ¶ 7*. The container of Spectrus NX1100 was split and leaking the chemical over the work deck at the stern of the vessel. *Id., at ¶ 8, 9, 12, 13*. Later that day, the Plaintiffs, crewmembers aboard the M/V OCEAN GIANT, were ordered by their superior to clean the pool of spilled Spectrus NX1100. *Id., ¶ 15*. After cleaning the chemical spill, the Plaintiffs developed second degree chemical burns to portions of their bodies caused by exposure to the spilled Spectrus NX1100 and are now permanently scarred. *Id., at ¶ 19-23*.

## II.     SUMMARY JUDGMENT LEGAL STANDARD

Pursuant to **Fed.R.Civ.P.** 56 (a), summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if it "might affect the outcome of the suit under the governing law" and a dispute is "genuine" if it is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.    ARGUMENT

The Plaintiffs are entitled to summary judgement on Counts V and XIII of their Complaint because the facts, when cast and analyzed in a light most favorable to the Defendant, show that the Plaintiffs suffered second degree burns that were caused by a potent and corrosive chemical that was spilled from a broken, split and leaking container. As a matter of law, a container of a potent corrosive chemical, which is part of the vessel's stores and which is split

and leaking over the work deck is an unseaworthy condition.

As a preliminary matter, there is no dispute that the chemical that burned the Plaintiffs was part of the vessel's stores and not its cargo. On the morning of August 20, 2019, Mr. Bernardez helped his supervisor, the Bosun, load stores onto the vessel. *Pls. Stmnt of Mat Facts,* *¶ 4*. One of the stores that was loaded was a container of Spectrus NX1100. *Id., at ¶ 6*. Stores are operating consumables and durables that are used onboard during the voyage. *Id., at ¶ 5*. Spectrus NX 1100 is a biocide that is used on the vessel during the voyage to kill algae growth in the vessel's fuel tanks. *Id., at ¶ 7*.

1. *The Container of Spectrus NX1100 was an Unseaworthy Condition*

When cast and evaluated in a light most favorable to the Defendant, there is no dispute of material fact that the container of Spectrus NX1100 loaded on to the vessel on August 20, 2019 was split and leaking onto the work deck. As a matter of law, a container that is split and leaking a potent acidic chemical onto the work deck is an unseaworthy condition.

"A claim based on unseaworthiness enforces the shipowner's[1] absolute duty to provide to every member of his crew a vessel **and appurtenances** reasonably fit for their intended use." (Emphasis added. Internal quotations omitted.) *Ferrara v. A. & V. Fishing, Inc.*, 99 F.3d 449, 453 (1st Cir. 1996). The duty is so broad "that even a temporary and unforeseeable malfunction or failure of a piece of equipment is sufficient to establish an unseaworthy condition." *Napier v. F/V DEESIE*, Inc., 454 F.3d 61, 68 (1st Cir. 2006). It "imposes a strict liability regime on shipowners"; *id.*; such that "the shipowner's actual or constructive knowledge of the unseaworthy

---

[1]For unseaworthiness liability purposes, "an owner pro hac vice is treated as a shipowner. . . . . Thus, an owner pro hac vice may be liable for the unseaworthiness of a vessel." (Internal citations omitted) *McAleer v. Smith*, 57 F.3d 109, 112 (1st Cir. 1995).

condition is not essential to his liability." *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549 (1960).

The unseaworthiness doctrine applies to containers used to hold the vessel's cargo such that a container that leaks is "not reasonably fit for its intended purpose." "A ship that leaks is unseaworthy; so is a cargo container that leaks." *Gutierrez v. Waterman S. S. Corp.*, 373 U.S. 206, 213–14 (1963). It does not matter how the leak in the container occurred or even whether it occurred prior to loading on to the vessel, during the load or afterwards. *See, e.g.*, *Ferrara v. A. & V. Fishing, Inc.*, 99 F.3d 449, 453 (1st Cir. 1996) ("[U]nseaworthiness is a condition, and how that condition came into being—whether by negligence or otherwise—is quite irrelevant to the owner's liability for personal injuries resulting from it."). "When the shipowner accepts cargo in a faulty container or allows the container to become faulty, he assumes the responsibility for injury that this may cause to seamen or their substitutes on or about the ship." *Gutierrez*, 373 U.S. at 213–14.

Likewise, the unseaworthiness doctrine also applies to containers used to hold the ship's "stores"—products to be consumed by the vessel or crew during the voyage—such that a container that leaks stores is "not reasonably fit for its intended purpose." The First Circuit has specifically held "that the unseaworthiness doctrine applies to ships' stores" and "extends to material in which ships' stores are wrapped." *Martinez v. Sea Land Services, Inc.*, 763 F.2d 26, 27-28 (1st Cir. 1985). Thus, a corrosive chemical used onboard the vessel during its operations, such as Spectrus NX1100, and which leaks from its container is an unseaworthy condition. *See, e.g.*, *Gutierrez*, 373 U.S. at 214 ("Beans belong inside their containers, and anyone should know, as the trial court found, that serious injury may result if they get out of their containers and get

underfoot").

Here, on the morning of August 20, 2019, Mr. Bernardez helped the Bosun load stores onto the vessel, which included a single two-and-a-half gallon container of Spectrus NX1100. *Pls. Stmnt of Mat Facts, ¶ 4, 6*. As the stores were loaded onto the deck the Bosun removed a leaking container from the load. *Id., at ¶ 8*. Then later in the day, the Third Mate of the vessel at the time, Jason Pollock, discovered liquid spilled on the deck. *Id., at ¶ 11, 12*. When he first observed the spill liquid he noticed the liquid coming from a leaking container. *Id., at ¶ 12*. The container was "sitting alone on the deck" and had been placed inside a plastic drip pan by someone. *Id., at ¶ 10*.

A couple gallons had leaked from the container and a large amount of the chemical had formed a pool on the work deck. *Id., at ¶ 12, 13*. While Mr. Pollock didn't know what the chemical in the container was he recognized the green and rectangular and leaking container as that of a chemical used by the Engine Department. *Id., at ¶ 14*. So, he thereafter summoned and directed the Plaintiffs, Mr. Bernardez and Mr. Melvin to help clean-up the spill. *Id., at ¶ 15*.

The only permissible and logical conclusions from these facts is that Spectrus NX1100 had spilled from a damaged and leaking container onto the work deck and formed a pool. In fact, the Defendant has admitted precisely this. The Defendant's Fed.R.Civ.P. 30(b)(6) witness, Thomas Milliner, testified that only one chemical was spilled onto the work deck of the M/V OCEAN GIANT on August 20, 2019 and it was Spectrus NX1100. *Id., at ¶ 9*. He further admitted that the Spectrus NX1100 that was spilled on the deck came from a container that was "split and leaking" and had been loaded onto the vessel earlier that day. *Id.*

A damaged container of Spectrus NX1100 that leaks onto the work deck is an

unseaworthy condition as a matter of law.  In *Gutierrez v. Waterman S. S. Corp.*, 373 U.S. 206, 207 (1963), a stevedore was injured while unloading a vessel when he slipped and fell on beans that had leaked from broken bags they were transported in and offloaded in.  The beans were part of the ship's cargo.  *Id.*  The Supreme Court affirmed the trial court's finding of unseaworthiness explaining that a proper application of the unseaworthiness doctrine requires that even cargo containers be "reasonably fit for the purpose for which they are to be used" and holding that "beans belong inside their containers" and can cause serious injury when they spill out.  *Id., at 213-14*.  Similarly, in *Martinez v. Sea Land Services, Inc.*, 763 F.2d 26, 27 (1st Cir. 1985), a seaman carrying two boxes of soft drinks that were part of the ship's stores injured his back when he attempted to stop the soft drinks from falling when the plastic sleeve that was loosely wrapped around the boxes slipped.  In reversing the district court's granting of summary judgment the First Circuit, then Judge Breyer, held "that the seaworthiness warranty of 'fitness for duty' extends to material in which ships' stores are wrapped."  *Id.*

     Just as in *Gutierrez* and *Martinez*, here the container holding the Spectrus NX1100 was not "reasonably fit" for its purpose of holding and transporting the chemical onto and around the vessel because the undisputed facts show it was damaged and leaking.  Spectrus NXZ1100, is a potent acid that can cause skin burns (*see* **supra**, *Section 2* below) and it belonged in its container until put into the vessel's fuel tanks but it leaked over the work deck and subsequently caused serious injuries to the Plaintiffs.  It is of no moment that the container may have been in excellent shape prior to being loaded or that the Defendant may claim that it had no notice or knowledge that it was damaged ("split") or leaking when it was loaded onto the vessel.[2]  *See Napier v. F/V*

---

[2]In this case it is undisputed that the Defendant knew the container was damaged and leaking

6

*DEESIE*, Inc., 454 F.3d 61, 68 (1st Cir. 2006) ("even a temporary and unforeseeable malfunction or failure of a piece of equipment is sufficient to establish an unseaworthy condition"); *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549 (1960) ("the shipowner's actual or constructive knowledge of the unseaworthy condition is not essential to his liability").  Nor is it relevant that neither party can explain how or why the container began leaking.  *See* *Ferrara v. A. & V. Fishing, Inc.*, 99 F.3d 449, 453 (1st Cir. 1996) ("[U]nseaworthiness is a condition, and how that condition came into being—whether by negligence or otherwise—is quite irrelevant to the owner's liability for personal injuries resulting from it."); *Van Carpals v. S. S. Am. Harvester*, 297 F.2d 9, 11 (2d Cir. 1961) (holding that unseaworthiness existed even where the appurtenance's failure was inexplicable).

There is no genuine dispute of material fact that the Spectrus NX1100 container was damaged and leaked a pool of the chemical onto the vessel's work deck which, when analyzed under the controlling case law above, is an unseaworthy condition as a matter of law.

2. *The Spectrus NX1100 Caused the Plaintiffs Chemical Burns*

When cast in a light most favorable to the Defendants, there is no genuine dispute of material fact that both the Plaintiffs sustained chemical burns to various portions of their body caused by the Spectrus NX1100 spill.

"In order to prove a claim of unseaworthiness, a plaintiff must show that the unseaworthy condition of the vessel was the proximate or direct and substantial cause of the seaman's injuries." *Brophy v. Lavigne*, 801 F.2d 521, 524 (1st Cir. 1986).  That is, the unseaworthiness "must be a substantial factor in bringing about harm and the injury incurred must have been a

---

when it was loaded onto the vessel because the Bosun took the container out from the rest of the

reasonably foreseeable consequence." *Napier v. F/V DEESIE, Inc.*, 454 F.3d 61, 68 (1st Cir. 2006)

Here, it was entirely foreseeable that Spectrus NX1100 could cause severe skin burns and symptoms and the large amount of the chemical that leaked and formed a pool over the work deck was a substantial factor in causing the Plaintiffs' skin burns and injuries. First, the chemical is a known acid that can cause skin burns. The Defendant uses this chemical as a biocide to kill algae growth in its fuel tanks. *Pls' Stmnt of Mat Facts, at ¶ 7*. Dr. Christopher Cummins, PhD., professor of Chemistry at the Massachusetts Institute of Technology, and the Plaintiff's retained liability expert, will testify, consistent with the opinions he has expressed in his Fed.R.Civ.P. 26 (a)(2) report, that Spectrus NX1100 is a strong acid that is corrosive and known to cause severe skin burns. *Id.* Similarly, Dr. Colleen Ryan, a burn surgeon at Massachusetts General Hospital, and the Plaintiffs' retained medical expert, will testify at trial, consistent with what has been disclosed in her Fed.R.Civ.P. 26 (a)(2) report that Spectrus NX1100 is a potent acid that can burn the skin and the onset of burn symptoms can be delayed for several days because the chemical acts as a desensitizer. *Id.*

The Plaintiffs were directed to clean the Spectrus NX1100 spill and both Plaintiffs were on their hands and knees in the chemical while cleaning it up. *Id., at ¶ 15, 16*. The Plaintiffs gloves as well as portions of their work overalls became saturated with the chemical and mixed with sweat to drip and travel to other portions of their bodies. *Id., at ¶ 18*. After cleaning-up the pool of Spectrus NX1100 Mr. Melvin returned to his quarters and started to feel tingling and irritation in his skin and those areas turned red. *Id., at ¶ 19*. Similarly, portions of Mr.

---

stores and it was put in a plastic drip pan.

Bernardez skin turned red and he developed blisters 5-10 days later. *Id., at ¶ 20*.

Dr. Colleen Ryan, will opine at trial, consistent with what has been disclosed in her Fed.R.Civ.P. 26 (a)(2) report, that the Plaintiffs suffered second degree chemical burns and are now left with permanent hyperpigmentation and discoloration to portions of their skin that were caused by the Spectrus NX1100 they were tasked with cleaning. *Id., at ¶ 22, 23*. Similarly, dermatologist Dr. Kenneth Reed, the Defendant's own retained medical expert in this action, has indicated in his report that it is more likely than not that the Plaintiffs' hyperpigmentation to portions of their skin are the result of second degree chemical burns that were caused by Spectrus NX1100. *Id., at ¶ 23*.

Even when cast in a light most favorable to the Defendant, there is no dispute that the Plaintiffs suffered from second degree chemical burns proximately caused by the pool of Spectrus NX1100 they were tasked with cleaning.

V.     **CONCLUSION**

When all of the facts are cast in a light most favorable to the Defendant, and all reasonable inferences are drawn in its favor, there is no dispute of material fact that the container of Spectrus NX1100 was split and leaking the chemical which formed a pool on the work deck. This is, as a matter of law, an unseaworthy condition. Further, there is no dispute of material fact that it was entirely foreseeable that Spectrus NX1100 could cause severe skin burns and symptoms and the large amount of the chemical that leaked and formed a pool over the work deck was a substantial factor in causing the Plaintiffs' skin burns and injuries.

WHEREFORE, the Plaintiffs respectfully request that the Court enter judgment in their favor finding that the split and leaking container of Spectrus NX1100 was an unseaworthy

condition, which was the proximate cause of the Plaintiffs' injuries, and enter Summary Judgment as to Counts Five and Thirteen of their Complaint.

                                      Respectfully submitted for the
the Plaintiffs, NAHUM BERNARDEZ,
and DEREK MELVIN, by
their attorney,

Dated: 10/02/2023

                                      /s/ Jonathan E. Gilzean
Jonathan E. Gilzean, Esq.
Latti & Anderson, LLP
30-31 Union Wharf
Boston, MA 02109
(617) 523-1000
JGilzean@lattianderson.com

## CERTIFICATE OF SERVICE

    I hereby certify that on October 2, 2023, I electronically filed the above document with the Clerk of the Court using CM/ECF system which will send notification of such filing(s) to all counsel of record in the above captioned matter.

                                      /s/ Jonathan E. Gilzean
Jonathan E. Gilzean
Latti & Anderson LLP
30-31 Union Wharf
Boston, MA 02109
617-523-1000
JGilzean@lattianderson.com