UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
NAHUM BERNARDEZ and                     )
DEREK MELVIN,                           )
                                        )
        Plaintiffs,                     )
                                        )
                v.                      )        Civil Action No. 21-11355-MJJ
                                        )
WATERMAN STEAMSHIP                      )
CORPORATION and OCEAN GIANT             )
II SHIPPING TRUST,                      )
                                        )
        Defendants.                     )
_____        )


REPORT AND RECOMMENDATION ON
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
[Docket Nos. 66, 71]

January 25, 2024

Boal, M.J.

        In this action, plaintiffs Nahum Bernardez and Derek Melvin allege that they suffered

chemical burns to large portions of their body after cleaning a liquid spill while working for

defendant Waterman Steamship Corporation ("Waterman") aboard the M/V Ocean Giant.[1]

Plaintiffs have moved for summary judgment in their favor on Counts V and XIII of the

complaint, asserting claims for unseaworthiness. Docket No. 66.[2]  Waterman has opposed the

motion and filed a motion to strike certain paragraphs of the Plaintiffs' statement of undisputed

---

[1] The Complaint also named as defendants the United States Department of the Navy and Ocean Giant II Shipping Trust. All claims against them have been dismissed. See Docket Nos. 28, 81.

[2] On September 2, 2021, the District Judge assigned to this case referred this case to the undersigned for full pretrial management, including report and recommendation on dispositive motions. Docket No. 5.

1

facts and the testimony supporting those paragraphs.  Docket Nos. 69, 71.  For the following reasons, I recommend that Judge Joun grant the motion to strike and deny the motion for summary judgment.

I.      FACTUAL BACKGROUND

        A.      Scope Of The Record

        As a preliminary matter, this Court must address Waterman's motion to strike paragraphs 6, 8, 9, and 10 of the Plaintiffs' concise statement of material facts and the testimony supporting those paragraphs.  Docket No. 71.  Those paragraphs rely on deposition testimony of Bernardez regarding the source of the spill.  Waterman argues that such testimony is inadmissible hearsay. Id. at 1.  Plaintiffs argue, on the other hand, that the testimony is not hearsay.  Docket No. 75 at 3-8.

        The testimony at issue is as follows:

        Q.  Okay.  Do you know where the liquid came from?

        A.  They have a separate bottle.  They say it broke.

        Q.  They have a what?

        A.  When - - in the morning when I was working with the bosun, he saw the - - one bottle was leaking.

        Q.  Okay.

        A.  The bosun open it up and pick it up.  That bottle was leaking - - leaky. I believe - - I think so.  I don't know if for that one, but I think for that one.  I don't know.

        Q.  So when some of the stores were coming onboard, one bottle was leaking on the stores?

        A.  Yes.

        Q.  And you believe it's from that bottle?

A.  I think so, yes.

Q.  Did you see it come from that bottle?

A.  I think it's from the bottle.

MR. GILZEAN: The question is did you see it, the liquid come out of the bottle?

A.  I don't remember.  I don't know if I see it.[3]

Because Bernardez had previously testified that he was working with the bosun loading stores onto the vessel,[4] Plaintiffs argue that his testimony shows that he was speaking about his observations rather than about what the bosun told him and, therefore, his testimony is not hearsay.[5]  Docket No. 75 at 3-5.  Bernardez's testimony, however, is unclear on this point.

Bernardez's first language is Spanish.[6]  At several points during his deposition, he appeared to have trouble understanding questions and/or providing answers in English.[7]  While an interpreter was available during the deposition, defense counsel repeatedly discouraged Bernardez from using the interpreter.[8]  Plaintiffs' counsel objected but did not insist on Bernardez using the interpreter for the entirety of the deposition.[9]  Defense counsel was wrong

---

[3] Deposition Testimony of Nahum Bernardez (Docket No. 67-2) ("Bernardez Depo") at 55:6-56:1.

[4] See Bernardez Depo at 45:20-47:18.

[5] Plaintiffs acknowledge that the statement that "[t]hey say it broke" is an out of court statement but point out that they do not rely on that particular statement.  See Docket No. 75 at 5-6.

[6] Bernardez Depo at 9:9-10.

[7] See, e.g., Bernardez Depo at 19:17-20:1; 34:18-35:2; 95:1-19; 105:5-10; 109: 5-18; 111:6-11; 121:9-122:20; 123:1-12; 129:22-130:12; 131:16-23.

[8] See, e.g., Bernardez Depo at 4:16-6:4; 7:14-18; 163:23-166:20.

[9] See, e.g., Bernardez Depo at 7:19-23; 164:3-166:22.

on insisting that Bernardez testify without the aid of the interpreter but Plaintiffs' counsel also failed to demand the use of the interpreter (and secure a court order if necessary). As a result, this Court is left with ambiguous and unclear deposition testimony from Bernardez.[10] Accordingly, this Court will not consider Bernardez's testimony regarding the source of the spill and the corresponding paragraphs in the Plaintiffs' statement of facts.

        B.    <u>Facts</u>[11]

        On August 20, 2019, the Plaintiffs were both employed by Waterman and serving as crew members aboard the M/V Ocean Giant (the "vessel").[12] Waterman owned, operated, and controlled the vessel.[13] Bernardez joined the vessel as a "GUDE," which is an entry level position.[14] He was assigned basic tasks to perform on deck.[15]

        During the morning of August 20, 2019, Bernardez helped his supervisor load stores[16] onto the vessel while it was at port in Norfolk, Virginia.[17] Later that day, third mate Jason

---

[10] According to Plaintiffs' counsel, "because Bernardez remains an active duty merchant mariner currently at sea it is near impossible to obtain a more detailed affidavit, via a Spanish interpreter, clarifying statements made in his deposition." Docket No. 75 at 10.

[11] The facts are taken from the Combined Statement of Material Facts (Docket No. 76). Statements of fact are referred to as "SOF" while responses are referred to as "Resp." This Court construes the record in the light most favorable to Waterman and resolves all reasonable inferences in its favor. <u>Baum-Holland v. Hilton El Con Management, LLC</u>, 964 F.3d 77, 87 (1st Cir. 2020) (citations omitted).

[12] SOF ¶ 1; Resp. ¶ 1.

[13] SOF ¶ 2; Resp. ¶ 2.

[14] SOF ¶ 3; Resp. ¶ 3.

[15] <u>Id.</u>

[16] Stores are supplies used to replenish the vessel's operating consumables and durables used during the voyage. SOF ¶ 5; Resp. ¶ 5.

[17] SOF ¶ 4; Resp. ¶ 4.

Pollock discovered a 2.5-gallon container of Spectrus NX-1100 ("Spectrus") sitting in a drip pan, some of which had leaked onto the vessel's fantail deck.[18]  Spectrus is a biocide used to prevent the growth of algae in the vessel's fuel tanks.[19]  Spectrus is acidic and corrosive and may cause chemical burns.[20]  Pollock recognized the substance to be a chemical used by the engineering department although he did not know which chemical it was.[21]  Pollock located second assistant engineer Nicholas Cabral, who was familiar with such chemicals.[22]

After locating and conferring with Cabral, Pollock found Plaintiffs and asked them to help clean up the spill.[23]  Pollock and Cabral told the Plaintiffs that they needed to clean the spill; that they should not get the chemical on their skin; and that they should wear personal protective equipment ("PPE"), including latex gloves and safety glasses.[24]  Pollock instructed the Plaintiffs to get PPE, rags, and trash bags to clean the spill.[25]

Plaintiffs, together with Pollock and Cabral, cleaned up the spill.[26]  They used rags to soak up the Spectrus from the deck and put the rags in trash bags.[27]  The parties dispute whether

---

[18] Resp. ¶ 11.

[19] SOF ¶ 7; Resp. ¶ 7.

[20] Id.

[21] Resp. ¶ 14; see also Deposition of Jason Pollock (Docket No. 67-7) ("Pollock Depo") at 34:7-20.

[22] Resp. ¶ 15.

[23] Id.

[24] See Resp. ¶ 15; Pollock Depo at 43:2-45:16.

[25] Resp. ¶ 15; Pollock Depo at 51:7-9.

[26] Resp. ¶ 16.

[27] SOF ¶ 17; Resp. ¶ 17; Pollock Depo at 69:7-14.

the Plaintiffs were on their hands and knees while cleaning the spill and whether they got Spectrus on their coveralls.[28]  They also dispute whether Plaintiffs were wearing latex or leather gloves and whether the gloves got soaked with Spectrus.[29]  In addition, the parties dispute how long the clean up lasted.  According to Plaintiffs, cleanup lasted four to five hours, while Waterman maintains the cleanup lasted approximately 45 minutes.[30]

Soon after the cleanup, Melvin started experiencing irritation on his skin.[31]  Bernardez began to develop redness and blisters on his skin.[32]  Bernardez does not remember when the redness and blisters first began, but he had them when the vessel was traveling to Wilmington, North Carolina.[33]  The parties dispute when the Plaintiffs reported their alleged injuries to Waterman.  It is Waterman's position that Plaintiffs did not report any irritation or injury to their skin until October 14, 2019.[34]  Plaintiffs maintain that Melvin reported skin irritation to Pollock around 8:00 p.m. the same day of the cleanup and Bernardez reported his burns to the chief mate

---

[28] Compare SOF ¶ 16 with Resp. ¶ 16.

[29] Compare SOF ¶ 18 with Resp. ¶ 18; see also Pollock Depo at 55:10-15; 68:1-9; 68:24-69:6; Bernardez Depo at 51:17-18; 58:21-59:7; Deposition of Derek Melvin (Docket No. 67-8) ("Melvin Depo") at 44:1-7; 58:12-14.

[30] SOF ¶ 25; Resp. ¶ 25.  There are two paragraphs numbered 25.  This citation is to the first paragraph numbered 25.

[31] SOF ¶ 19; Resp. ¶ 19.

[32] SOF ¶ 20.

[33] Id.  The vessel left Baltimore for Wilmington on August 28, 2019 and arrived in Wilmington on August 30, 2019.  Deposition of Thomas Milliner (Docket No. 67-3) ("Milliner Depo") at 19:3-6.

[34] Resp. ¶¶ 19, 20, 21.

while the vessel was at sea from Norfolk, Virginia to Wilmington, North Carolina.[35]  Neither

Pollock nor Cabral reported any irritation or skin injuries following the cleanup.[36]

## II.   ANALYSIS

### A.   Standard Of Review

Summary judgment is appropriate if the record, viewed in the light most favorable to the

nonmoving party "discloses 'no genuine issue of material fact' and [thus] demonstrates that 'the

moving party is entitled to a judgment as a matter of law.'"  Zabala-De Jesus v. Sanofi-Aventis

Puerto Rico, Inc., 959 F.3d 423, 427-428 (1st Cir. 2020) (quoting Iverson v. City of Boston, 452

F.3d 94, 98 (1st Cir. 2006)).  A dispute is genuine where the evidence "is such that a reasonable

jury could resolve the point in the favor of the non-moving party."  Rivera-Rivera v. Medina &

Medina, Inc., 898 F.3d 77, 87 (1st Cir. 2018) (citation omitted).  A material fact is one with the

"potential of changing a case's outcome."  Doe v. Trustees of Bos. College, 892 F.3d 67, 79 (1st

Cir. 2018).

"To avoid 'the swing of the summary judgment scythe,' the nonmoving party must

adduce specific facts showing that a trier of fact could reasonably find in his favor."  Johnson v.

Johnson, 23 F.4th 136, 141 (1st Cir. 2022) (citation omitted).  "The nonmovant cannot rely on

'conclusory allegations, improbable inferences, and unsupported speculation.'"  Id. (citation

omitted).

---

[35] Resp. ¶ 25.  This citation is to the second paragraph numbered 25.  The vessel left Norfolk on
August 25, 2019.  Milliner Depo at 18:18-21.

[36] Resp. ¶¶ 19, 21, 25.

B.     Material Issues Of Fact Prevent A Finding Of Unseaworthiness

The Plaintiffs argue that they are entitled to summary judgment on their unseaworthiness claims because there is no dispute that a container of Spectrus loaded onto the vessel on August 20, 2019 was split and leaked onto the work deck.  Docket No. 68 at 3.  According to them, a container that is split and leaking a potent acidic chemical onto the work deck is an unseaworthy condition as a matter of law.  Id.  I find that material issues of fact prevent such a finding.

"A claim based on unseaworthiness enforces the shipowner's absolute duty to provide to every member of his crew a vessel and appurtenances reasonably fit for their intended use." Ferrara v. A. & V. Fishing, Inc., 99 F.3d 449, 453 (1st Cir. 1996) (internal quotation marks and citations omitted).  "The duty includes maintaining the ship and her equipment in a proper operating condition, and can be breached either by transitory or by permanent defects in the equipment."  Id. (citing Hubbard v. Faros Fisheries, Inc., 626 F.2d 196, 199 (1st Cir. 1980)).  It extends to material in which ships' stores are wrapped.  Underwriters at Lloyd's v. Labarca, 260 F.3d 3, 7 (1st Cir. 2001) (citing Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 499 (1971)). "Even 'temporary and unforeseeable malfunction or failure of a piece of equipment under proper and expected use is sufficient to establish . . . unseaworthiness.'"  Id. (citations omitted). Nevertheless, "[t]he standard is not perfection, but reasonable fitness; not a ship that will weather every imaginable peril of the sea, but a vessel reasonably suitable for her intended service." Ferrara, 99 F.3d at 453 (quoting Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550 (1960)); see also Johnson v. Bryant, 671 F.2d 1276, 1279 (1st Cir. 1982) (noting that warranty of seaworthiness "does not obligate the owner to furnish an accident-free vessel").

A claim of unseaworthiness is not dependent upon a finding of negligence.  Ferrara, 99 F.3d at 453.  "The reason, of course, is that unseaworthiness is a *condition*, and how that

8

condition came into being—whether by negligence or otherwise—is quite irrelevant to the owner's liability for personal injuries resulting from it."  Id. (emphasis in original; quoting Usner, 400 U.S. at 498).  However, "negligence may creep in via 'reasonable fitness,' such that the initial determination of what is and is not a 'defect' making the ship unfit for service becomes a question of whether those responsible acted with 'reasonable care' under the circumstances."  Barlas v. United States, 279 F.Supp.2d 201, 212 (S.D.N.Y. 2003) (citations omitted).  Courts may therefore "use 'methods of analysis, and language, concurrently used in negligence cases' for the 'initial determination—answering the threshold question whether the condition is unseaworthy as not reasonably fit.'"  Id. at 213 (citing Marshall v. Ove Skou Rederi A/S, 378 F.2d 193, 198 n.6 (5th Cir. 1967)).  "In other words, '[d]istinctions which in common sense are relevant to a determination of seaworthiness do not become irrelevant because they are relevant also to negligence.'"  Id.  As such, factors such as the duration of the alleged defective condition may be considered in determining whether it rendered the vessel unseaworthy.  See id. at 215.

Here, it is undisputed that a 2.5 gallon container of Spectrus was found leaking into a drip pan placed on the vessel's fantail deck and that some portion of the 2.5 gallons had leaked onto the deck itself.[37]  It is also undisputed that Spectrus is acidic and corrosive and may cause chemical burns.[38]  However, Waterman has raised a disputed issue of fact as to whether Spectrus is only hazardous if handled improperly and, therefore, whether the presence of Spectrus on the deck alone created an unreasonably unfit condition.  Waterman has pointed to evidence that Pollock and Cabral were able to clean up the spill without suffering burns or other adverse

[37] See Resp. ¶¶ 9-10.

[38] See Resp. ¶ 7.

9

consequences, indicating that it is possible to handle Spectrus safely.[39]  Although the Plaintiffs

claim that they got on their hands and knees to clean up the Spectrus, Pollock testified that he

ordered them not to get on their hands and knees during the cleanup and that had he seen them

on their hands and knees, he would have stopped them.[40]  There are also disputed issues of fact

regarding whether the Plaintiffs were provided with, and used, appropriate PPE.[41]

"'Unseaworthiness' is normally a question of fact to be determined by the jury." Jordan

v. U.S. Lines, Inc., 738 F.2d 48, 50 (1st Cir. 1984) (citations omitted).  Where, as here, the

moving party bears the burden of proof at trial, he can prevail only by proving each element of

his case with evidence sufficiently compelling that no reasonable jury could return a verdict for

the nonmovant.  See Am. Steel Electors, Inc. v. Local Union No. 7, Ass'n of Bridge, Structural,

Ornamental & Reinforcing Iron Workers, 536 F.3d 68, 75 (1st Cir. 2008) (citing Torres Vargas

v. Santiago Cummings, 149 F.3d 29, 35-36 (1st Cir. 1998)).  As discussed above, Defendants

have raised material issues of fact regarding whether the leaking container of Spectrus created an

unseaworthy condition.  Accordingly, this Court cannot conclude that unseaworthiness has been

established as a matter of law.[42]

III.   RECOMMENDATION

For the foregoing reasons, this Court recommends that Judge Joun grant Waterman's

motion to strike and deny the Plaintiffs' motion for summary judgment.

---

[39] See Resp. ¶ 19.

[40] See Pollock Depo at 76:3-77:2; 107:20-23; 124:24-125:4.

[41] See Resp. ¶ 17.

[42] For that reason, is unnecessary to address Waterman's arguments regarding causation.

IV.     <u>REVIEW BY DISTRICT COURT</u>

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of service of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  <u>See</u> Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  <u>See</u> <u>Phinney v. Wentworth Douglas Hospital</u>, 199 F.3d 1 (1st Cir. 1999); <u>Sunview Condo. Ass'n v. Flexel Int'l, Ltd.</u>, 116 F.3d 962 (1st Cir. 1997); <u>Pagano v. Frank</u>, 983 F.2d 343 (1st Cir.1993).

 /s/  Jennifer C. Boal
JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE